Brockenbrough, J.
The principal point which arises, and has been discussed, in this case, is the question as to the liability of the sheriff for the estate of a deceased person committed to his hands by order of court, the administration of which has not been completed at the expiration of his office of sheriff. It depends on the proper construction of the statute of 1792, 1 Rev. Code of 1792, ch. 92. § 61. pp. 167, 8. That statute made the sheriff the administrator of all the goods, chattels and credits of an intestate, and of all the goods, chattels, credits and lands of a testator, directed by the will to be sold. The sheriff was to make sale of the property, and to return the bonds to court. The court was then, by its order, to direct that the bonds be distributed amongst the creditors, not as in other cases according to the dignity of the debts, but -pari passu amongst those whose claims had been allowed. If there was a surplus afterpayment of debts, it was to be distributed amongst the distributees or legatees. After the order of court was made, the sheriff was to assign the bonds, and deliver the property unsold to the creditors and others. So that the sheriff was the administrator, under the order and control of the court. If he failed in his duty, either in not selling the estate, or in not returning the bonds, or in not distributing them to creditors, legatees or others, he was held responsible for such failure at the suit of those entitled. I think it clear, that after the court had committed an estate to the hands of a sheriff, he was bound to proceed with the administration of it to its close, even though his office of sheriff should in the mean time expire. I am satisfied that the court could not take it out of the hands of the sheriff to whom it had been committed, and make a new commitment of it to the hands of the succeeding sheriff. The statute speaks of only one commitment : if it had contemplated two or more commitments of the same estate to successive sheriffs, it would have said so, and not have left so important a matter to mere inference. *396 Such a construction would have produced inextricable confusion. That I have given the proper construction to the statute of 1792, is, I think, obvious from the statute of the 7th January 1807, 2 Old Rev. Code, edi. of 1808. ch. 94. p. 1^(1 the first section of which provides for the single case of the death of the sheriff administrator, before he has fully administered: that, in that event, the succeeding sheriff, or sheriff then in office, should take into his hands the estate unadministered, and act in the same manner as if it had been originally committed to him. The administrator sheriff might die after he should have gone out of office, in which case the sheriff then in office was to be the administrator de bonis non. This might be after there had been several intermediate sheriffs, none of whom should act, but only the one then in office. So that the statute of 1807, clearly contemplated the continuance of the administration in the hands of the sheriff to whom the estate was committed after he should have gone out of office until his death.
This view is fortified by the remarks of judge Coalter in the case of Cocke v. Harrison, 3 Rand. 494.*
According to this view of the law, I think the chancellor was correct in deciding that Douglass was liable for the whole amount of Moore's estate, real and personal, which was directed by the court to be sold. The order for the sale of the personal estate was made in December 1806, and that for the sale of the real estate in June 1807; and Douglass continued in office until his successor Grayson qualified, which was not' till August 1807. The sale of the realty did not take place till October 1807; but that is a matter of no consequence. The bonds were, or ought to have been taken in the name of Douglass; lie was the person bound to return the bonds to court, and to assign them to creditors and legatees.
It was objected, that, as Douglass appears not to have been commissioned for the second year of his shrievalty, and as all the acts of his deputy, under the orders of the county court relative to Moore's estate, took place during that second year, he cannot be liable to the legatees, for the *397 amount of the estate sold by his deputy. I do not think there is any thing in this objection. The case of The Commonwealth v. Fairfax, 4 Hen. & Munf. 208. only decides, that the sureties in the sheriff’s bond for the first year, are not liable for fire taxes collected by the sheriff in the second year. The reason is, that the sureties are only bound according to the tenor of their obligation, which was, according to its legal effect, for the good conduct of the sheriff for one year. But it was never contended, that he who is de facto sheriff, and as such collects the taxes, and performs the other duties of the office, is not liable for the amount of those taxes, and ail other moneys collected by him by virtue of his office, and for all breaches of his duty as sheriff.
There is an error in this decree, for which it must be reversed, namely, that the court did not require that the legatees should give the usual refunding bonds with security. My brethren are also satisfied, that there is a defect in the proof, for which the cause must be remanded to the court below, for further proceedings to be had therein. In this I acquiesce.
Ttjctceh, P.
If it sufficiently appeared in this case, that Douglass, the sheriff of Loudoun, or his deputy, had proceeded under the orders of the county court, even after the expiration of his term of office, to execute those orders, I should have held him liable. He was the sheriff in June 1807; for having been qualified and commissioned in 1805, and no person having been commissioned and qualified in 1806, he was continued- in office (under the 6th section of the statute concerning sheriffs, 1 Rev. Code, ch. 78. p. 277.) until his successor Grayson qualified in August 1807. The order to sell the lands then in June 1807, was made on his motion, or on the motion of his deputy, which amounts to the same thing.* Having received that order, it, was to be *398 executed by him, or his deputy, even after the expiration of his term, and the duty did not pass to his successor. I have always been of opinion, upon the construction of the statute of 1792, that the sheriff, to whom administration was commihed, must complete it, in like manner as the sheriff who has levied an execution, must proceed to fulfil all its requisitions. By the order, the existing sheriff was put into possession of the estate: I speak of the personalty, particularly, as in reference to that, at least, the proposition is incontrovertible. The possession so vested in him was accompanied by an order (under the statute) to proceed to sell &c. and the statute makes no provision for a transfer of the possession of these goods to his successor, any more than for the transfer of goods taken in execution. He must, then, proceed to complete the duty, which he has once begun. It would, indeed, have been most mischievous if the administration was every year to have been changed, and yet this might have been, if the administration was to pass to each succeeding sheriff; for though a sheriff may serve two years, if reappointed, his term of service is one year only. Thus, every year the estate would be changing hands, and if wasted, the persons entitled to it would be involved in the difficulty of ascertaining by whom the devastavit was committed, and of determining which sheriff, and which set of sureties, should be pursued. The law, therefore, very wisely declined to provide for passing over the estate to the successor sheriff; and in this very omission, we see a clear manifestation of the legislative will; for had such a thing been contemplated, it would most assuredly have been provided for. Then, as to the realty: the possession of that remained in the heir, I presume, till the sale. Originally, I apprehend, there was some doubt about the sheriff’s right to sell the land directed by the will of the decedent to be sold. But the statute of 1792 provided, that the sheriff should take “the estate into his possession,” and sell what may be perishable, or necessary for payment of debts, “ or may be directed by will to be soldand the next section ratifies and confirms all sales of lands made by sheriffs, antecedent to the *399 statute, under the direction of the wills of testators, whose estates had been committed to them. I construe this statute, then, to authorize such future sales. Therefore, in this case, the county court had power to make the order of June 1807, for the sale of the land. It was made on Douglass’s motion; and every reason already given for supposing that the duty of administration did not devolve on the succeeding sheriff, applies here; since it would be absurd to suppose, that the legislature intended a divided administration. If the administration of the personalty was left with the old sheriff, it could not have been intended, that the administration of the really should be in the hands of his successor. These opinions are strongly sustained by the statute of January 1807, Sess. Acts of 1806-7, ch. 15. which provided, that where the sheriff committee should die before he had fully administered, the succeeding sheriff (if he died before his office expired) or sheriff then in office (that is, in office when the old sheriff died) should proceed to administer. Here, then, the continuance of the duties of the sheriff committee, though there were a successor in office, was clearly indicated, and his death only was to transfer these duties to that successor.
I am also of opinion, that the acts of the sheriff’s deputy, even after the expiration of the sheriff’s term of office, are to be considered as the sheriff’s official acts, unless he took the proper steps to remove that deputy. If, for instance, Binns was Douglass’s deputy on whom this administration had devolved, the sale of the land by Binns in October 1807, was to be considered as Douglass’s act, unless it were shewn, that his powers were superseded. Such, I presume, is the unquestioned doctrine as to executions which are yet to be completed.
I have entered into these explanations, not only because these questions have been earnestly argued, but because they may serve as a guide in the future management of this cause, which must be sent back for manifest error in the proceedings, in this; that the appellant having excepted to the report of the commissioner, alleging that the real estate *400 was not sold by his testator, and that no part of the proceeds ever came to his hands; and the record exhibiting no proof of the fact that such sale was made by him, or any deputy of his; the court should either have directed the evidence of that fact to be laid before it by the commissioner, or should have recommitted the report with instructions to the commissioner to report the evidence upon which Douglass was held chargeable with the sale, or the proceeds of sale, of the lands. I am therefore of opinion, that the decree should be reversed, and the cause remanded for further proceedings, upon the principles above declared.
Cabell, J. concurred. Decree reversed, and cause remanded &c.

 See Dabney's adm'r v. Smith, ante, p. 13.

Nole by the judge.—There was no evidence in the record, of Ms having any deputy, though, it is obvious, that Binns was so considered ; nor was there any evidence who sold the land, though the conveyance to the purchasers, and the bonds, would surely have shewn this.